(C. D. 524)

GARDEX, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided July 31, 1941)

G. W. R. Wallace; Barnes, Richardson & Colburn (Joseph Schwartz and Hadley S. King of counsel) for the plaintiff.

Paul P. Roa, Assistant Attorney General (Richard H. Welsh and Samuel D. Spector, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Baltimore, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation consisting of so-called hollow planters and dibbles. Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufacturers of metal not specially provided for. It is claimed that said articles are properly entitled to free entry under paragraph 1604 of said act as agricultural implements. The said claim has been specifically limited to the articles represented by items numbered 153 and 97 on the invoice covered by entry 01747 involved herein.

A sample of the merchandise covered by said invoice item 153, consisting of the so-called hollow planter, was admitted in evidence as exhibit 1, and a sample of the articles represented by said invoice item 97, consisting of the so-called dibble, was admitted in evidence as exhibit 2. Page 16 of the plaintiff's catalog, containing illustrations and descriptions of said articles, was admitted in evidence as illustrative exhibit A.

At the first hearing, held at Chicago on February 28, 1940, before Evans, Judge, in addition to said exhibits, the plaintiff offered in evidence the testimony of Frank Joseph Wolf, president of the plaintiff-corporation, who, after identifying said exhibits, testified that his corporation had been engaged in business since 1934; that he was thoroughly familiar with the merchandise represented by exhibits 1 and 2 herein; that he had used said articles himself and had seen them used many times in truck gardens. Being asked to describe more particularly how said articles were used, the witness proceeded to testify in part as follows:

This tool (Exhibit 2) is made out of steel, whereas other tools of similar design have been used for centuries, being made out of wood, but otherwise the same design, the only difference being this is made out of steel. Now, when a truck farmer who raises vegetables commercially is setting out * * * small cabbage plants, for instance, he uses a tool like this, thrusts it into the soil, gets an opening, and then sets his young plant in there, and then pushes the dirt around it so the young plant can grow. They mark out long rows, and then they just go along that way, and another person follows and drops a plant in, * * * and that is all that it is being used for.

By Mr. Schwartz.

Q. What is accomplished by that article, Exhibit 2? What purpose does it serve?—A. Well, in order to get a plant in the ground, you have to make a hole, and that is being done with this tool here.

Q. What kind of farmers or planters have you seen use Exhibit 2?—A. Truck gardeners, what we term truck gardeners. Truck gardeners are those people who raise vegetables for commercial purposes. * * *

* * * * * * *

.Q. Have you ever seen it used in connection with the raising of things other than vegetables?—A. Not to my knowledge. I wouldn't know where it could be used.

* * * * * * *

Judge Evans. Have you ever seen it used in the old country?
The Witness. Yes.
Judge Evans. How long ago?
The Witness. Ten or fifteen years ago.
Judge Evans. Used in the same way?
The Witness. Yes, and this is not a new tool as such. It has been in use with a wooden part down here for probably hundreds of years.

At the second hearing, held in Baltimore on October 23, 1940, the government offered in evidence the testimony of Bernard Bornhorn, chief merchandise sampler at the port of Baltimore, who produced an article which he described as a "trier" for the sampling of coffee, rice, beans, etc. Counsel for the government offered this article and asked that it be marked as an exhibit. Objection being raised by counsel for the plaintiff, on the ground that the article was in no way similar to the articles involved herein, the said objection was sustained.

Upon this record it is evident that the so-called hollow planters and dibbles constituting the imported merchandise at bar are chiefly used on the farm and have no other use.

In the case of *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472, which arose under the Tariff Act of 1913, the United States Court of Customs Appeals laid down the doctrine that chief use was the determining factor as to whether or not an article was an agricultural implement in the tariff sense of the term. Both under that act and the Tariff Act of 1922 that doctrine was followed by this court and the appellate court in numerous decisions. See *United States* v. *Lewis & Conger*, 16 Ct. Cust. Appls. 91, T. D. 42753; Abstracts 24844, 24885, 9739, 9975.

Unfortunately, for the plaintiff, the United States Court of Customs and Patent Appeals, in its later decisions has laid down the rule that in the case of an *eo nomine* provision the burden of proof rests upon the plaintiff to establish what the chief use of the article was at or prior to the enactment of the Tariff Act of 1930.

In the comparatively recent case of *United States* v. *S. S. Perry*, 25 C. C. P. A. 282, T. D. 49395, in holding a certain celluloid poultry leg band to be an agricultural implement within the meaning of paragraph 1604 of the Tariff Act of 1930, the court said:

As before stated, the collector classified the merchandise under paragraph 31 (b) (2) as an article made of cellulose. His report, which he made to the trial court, in which he adopted the advisory classification of the appraiser, was made more than ninety days after the filing of the protest, and under such circumstances it may not be regarded as an impeachment of his presumed finding (see *Pacific Guano & Fertilizer Co. et al.* v. *United States*, 15 Ct. Cust. Appls. 218, T. D. 42240) that the articles were not at the time of or immediately prior to the passage of the Tariff Act of 1930 chiefly used in the poultry raising business. See *National Hat Pin Co.* v. *United States*, 5 Ct. Cust. Appls. 435, T. D. 34971. It was, therefore, under the circumstances of this case, incumbent upon the protestant to prove that the articles were chiefly used in the manner above stated in the poultry raising business on or just prior to the date of the passage of the act. * * *

In our opinion, the decision of the appellate court in the more recent case of *W. J. Lake & Co., Inc., et al.* v. *United States*, 27 C. C. P. A. 247, C. A. D. 94, does not overrule the decision in the case of *United States* v. *S. S. Perry, supra*. In the former case the court had under consideration the construction of paragraph 1685 of said act which reads:

Guano, basic slag (ground or unground), manures, and (notwithstanding any other provision of this Act) those grades of all other substances *used chiefly for fertilizers, or chiefly as an ingredient in the manufacture of fertilizers*. [Italics ours.]

It is evident that the appellate court makes a distinction between a mere *eo nomine* provision which may be indicative of use and one in which appear the words "chiefly used." In other words, where the statute provides that the thing designated must be classified under a given provision only if chiefly used for a specific purpose, that use must be determined as of the date of the importation or immediately prior thereto of such an article, whereas the common or commercial meaning

of an *eo nomine* designation in the tariff act must be determined as of the effective date of such act. *Wilbur Ellis Co. et al.* v. *United States,* 18 C. C. P. A. 472, T. D. 44762.

While we have heretofore expressed our disapproval of this doctrine on the ground that it precludes any improvements in articles such as standard newsprint which the Congress intended to admit free of duty, nevertheless we bow to the decision of the higher tribunal.

We are therefore constrained to hold and do hereby hold that inasmuch as there is no evidence in the record that the articles constituting the imported merchandise at bar were chiefly used on the farm in agricultural operations at or immediately prior to the enactment of the Tariff Act of 1930, all claims of the plaintiff must be and they hereby are overruled. Judgment will be rendered accordingly.