(C. D. 542)

J. A. Freeman & Son *v.* United States

United States Customs Court, Second Division

(Decided October 17, 1941)

*Philip Stein* for the plaintiffs.
*Charles D. Lawrence,* Acting Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: These are suits against the United States, arising at the port of Portland, Oreg., brought to recover certain customs duties alleged to have been improperly exacted on particular importations of so-called semirotary wing pumps. Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as machines not specially provided for. It is claimed that said articles are properly entitled to free entry under paragraph 1604 of said act as agricultural implements.

The only witness herein was John Freeman, for 7 years a member of the plaintiff-firm, which latter deals in agricultural implements. He testified that the imported merchandise consisted of hand pumps used to pump gasoline and fuel oil from barrels into tractors or other gas engines, but principally into tractors on farms; and that this is accomplished through the medium of a piece of pipe attached to a rubber hose and connected with the tractor, and by operating a lever on the pump. He further testified:

Q. Have you personally seen the use to which these are put?—A. Yes.
Q. And that is the use which you just explained?
Mr. Weeks. I object unless he limits it to the time of the enactment of the tariff act, 1930, and before.
Mr. Stein. I don't think that is necessary. Congress intended to give the benefit to farmers and certainly they did not intend to limit it to implements used in agriculture at the time of the enactment of this tariff act.

Mr. WEEKS. That's the rule.

Judge EVANS. The question is one of use here but it is obvious there are many apparatus that have come into existence since 1930 and there must be some way of classifying them. I will overrule the objection.

Mr. WEEKS. Exception.

It further appears from his testimony that the witness had purchased during the past 4 years between 400 and 500 of these pumps, and that they were sold to farm machinery dealers, generally, in Oregon, California, Washington, and Idaho, but that prior to that time such pumps were not used in those states, nor were they dealt in by said firm; that as far as he knew the pumps were adaptable for use in connection with any type of farm that had on it a tractor that is propelled by gasoline or by a fuel oil Diesel engine, since the pumps function with gasoline or oil; that the barrels are usually hauled by wagon or trailer out to the field and the gasoline or oil is there pumped into the tractor; and that the pumps are adaptable to such field use because they are not very heavy, are easy to handle, are portable, and are low in price.

On cross-examination the witness testified in part as follows:

X Q. Are you able to state whether all of the merchandise, all the pumps, in these cases, are the same kind of pump, the same size?—A. There are some different sizes, and there are also some pumps that were not made out of cast iron; they were made out of brass, but I don't think that is involved here.

X Q. They are all adapted for the same purpose?—A. Yes. The cast iron ones were all adapted for any kind of petroleum product.

X Q. Would you say they are all used for pumping fuel from drums to the engine?—A. They are used for that.

X Q. That is the purpose for which they are adapted?—A. Well, that is what they are sold for. Of course, after they are on the farm, I don't know what they do.

X Q. I asked you if they were adapted, constructed, for that purpose?—A. Yes.

X Q. They are all constructed on the same principle?—A. All constructed on the same principle, yes.

X Q. They only differ as to size, and perhaps as to some component material?—A. Yes.

Counsel for the Government in his brief filed herein contends that free entry under said paragraph 1604 must be denied the instant pumps for the following reasons:

(1) Pumping gasoline into tractors is not an agricultural pursuit.

(2) Plaintiffs have not proved the chief use of the involved pumps.

We believe that the contentions of the Government are well founded. What is or is not an agricultural operation, or an agricultural implement, within the tariff interpretation thereof has been judicially enunciated by our appellate court in *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472. After quoting at length from various dictionary definitions of the term "agriculture," the court said:

While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other *allied* indus-

tries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.

The language of paragraph 391 illustrates and confirms this view. Thus while "wagons and carts" are within the paragraph—such as are used in the cultivation and removal of the crops by the farmer—certainly these words would not include buggies or automobiles—pleasure vehicles—nor would they extend to the wagon or cart of the contractor entirely unused upon the farm. There is no implement enumerated within the paragraph that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits.

\* \* \* \* \* \* \*

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

Now, the function performed by the instant mechanisms is the pumping of fuel oil or gas into tractors. But such tractors may not necessarily be agricultural implements, and certainly pumping oil or gas in and of itself is scarcely an agricultural operation. The tractors may well be of a kind largely if not chiefly used in road construction. At least, in *Splitdorf Electric Co.* v. *United States*, Abstract 23104, 63 Treas. Dec. 1525, certain contact points for magnetos sold chiefly to manufacturers of farm implements and adapted chiefly to farm implements, because they were designed to operate on a slow-revolution motor, were nevertheless held not to be free of duty under said paragraph 1604 as parts of agricultural implements.

The proof here submitted fails to connect either the pumps or the gasoline motors they supply with any agricultural use. The mere fact that such pumps are sold to jobbers of farm machinery, or even that they are installed on the farm, does not necessarily make them agricultural implements. *Oberle & Henry* v. *United States*, T. D. 36976, 32 Treas. Dec. 110; *Italian Vineyard Co.* v. *United States*, Abstract 9568, 56 Treas. Dec. 791. In order to prevail, the proof must establish the chief use of these pumps in agricultural operations in 1930 or prior thereto. See our very recent decision in *Gardex, Inc.* v. *United States* (7 Cust. Ct. 20, C. D. 524). The term "agricultural implement" has reference to use in agriculture and, in order to prove whether an imported implement is agricultural, the proof of use should be directed to the kind or class of such implements imported on the date of the passage of the tariff act, or immediately prior thereto. The present record does not supply such proof. See *United States* v. *F. W. Myers & Co., Inc.*, 24 C. C. P. A. 464, T. D. 48913.

Where, as in *United States* v. *C. J. Tower & Sons*, 26 C. C. P. A. 1, T. D. 49534, and in this case, the article has been in use only since 1934, the plaintiffs' burden is to show that it belongs to a class of

articles which was chiefly used for the purpose in question on and prior to June 17, 1930.

On the established facts and the law applicable thereto we must affirm the decision of the collector in each case holding the present pumps to be properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as machines not specially provided for. All claims of the plaintiffs are therefore overruled, and judgment will be rendered accordingly.