BEFORE THE SECOND DIVISION, NOVEMBER 2, 1959

No. 63473.—Camley International Co., Inc. *v.* United States, protest 287274–K (Los Angeles).

LAWRENCE, Judge: The importation described on the consular invoice as "Refrigerators for bottled gas" was classified by the collector of customs as articles not specially provided for, composed wholly or in chief value of metal, and duty was imposed thereon at the rate of 22½ per centum ad valorem as provided in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Plaintiff claims that said refrigerators should properly be classified as machines, finished or unfinished, not specially provided for, which are subject to duty at the rate of 13¾ per centum ad valorem in paragraph 372 of said act

(19 U.S.C. § 1001, par. 372), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

The pertinent text of the statutes involved reads as follows:

Paragraph 397, as modified, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

  \*      \*      \*      \*      \*      \*      \*

      Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
          Woven wire fencing \* \* \*

  \*      \*      \*      \*      \*      \*      \*

      Other (except slide fasteners and parts thereof)\_\_\_\_ 22½% ad val.

Paragraph 372, as modified, *supra*:

Machines, finished or unfinished, not specially provided for:
      Calculating machines specially constructed for multiplying and dividing _____ \* \* \*

  \*      \*      \*      \*      \*      \*      \*

      Other \* \* \*_____ 13¾% ad val.

The sole issue before us is whether said gas-operated refrigerators are machines within the meaning of that term, as used in paragraph 372, as modified, *supra*. If they are, the claim of plaintiff should be sustained; otherwise, the articles are dutiable as classified by the collector.

The evidence in the case consists of the testimony of plaintiff's witness, Norman Henry Lee, together with a photograph of one of the refrigerators in controversy (plaintiff's exhibit 2) and a schematic diagram of its operation (plaintiff's exhibit 1).

Lee stated that he was president of the plaintiff company with which he had been associated since its formation in 1953; that the major function of his company is the importation of appliances such as refrigerators and water heaters for distribution in the United States. From 1940 to 1950, the witness was associated with the Camley Engineering Co. in England, which engaged in civil engineering work and, during a portion of that time, was manufacturing refrigerators. He was a graduate of London University and a member of the Institute of British Engineering.

The witness stated he had seen and inspected the subject refrigerators in Germany at the plant of the manufacturer and was familiar with their operation. With the use of exhibits 1 and 2, Lee explained the operation of the refrigerator in substance as follows:

A solution of ammonia and distilled water constitutes the refrigerant; heat applied at the base of the generator causes a percolating action of the refrigerant in the coiled generator pipe within the chimney. This "causes the water and gas solution and ammonia gas solution to heat and rise in the pipe towards the condenser, where the ammonia gas vaporizes and leaves the water; the ammonia gas then passing through the condenser, which is the area shown on the photograph with a series of fins, air passing over the fins causes the ammonia gas to become liquid in form, which then flows by gravity, into the evaporator, which doesn't show on the photograph because it's inside the box, and which is the point where the ice is made."

When asked if the evaporator is where the ice cubes are placed in the refrigerator, the witness replied, "Right. At the point that it enters the evap-

orator, it passes from a tube of small diameter into a tube of large diameter, so that by expansion, it becomes gaseous in form again. At the same time, there is also a hydrogen charge within the unit, which, by the heat applied to the unit, rises towards the evaporator, and passing over the surface of the ammonia, assists in its evaporation. The action of the cooling of the ammonia in the evaporator removes heat from the cabinet, which creates a refrigeration effect. The ammonia gas then passes back from the evaporator through a heat exchanger and down into the absorber vessel, where the water in the absorber vessel attracts the ammonia, and it then goes back into an ammonia gas solution again. It then flows from the absorber vessel through the liquid heat exchanger [sic], which has the effect of cooling the warmer solution in the absorber vessel back to the base of the generator tub [sic], where the cycle commences again."

The operation above described continues permanently under normal circumstances. It was the witness' testimony that the unit utilizes energy, without which it could not operate—"The energy in this case is heat from a gas flame"—although other means could be used to create the heat by either liquid petroleum gas, natural gas, manufactured gas, kerosene, or other sources of heat.

It was also explained by the witness that the refrigerator modifies energy in that "the modification of the heat is caused within the process of passing through those parts of the refrigeration unit where the heat is modified by cooling action," the "parts" being the condenser and the heat exchangers. The degree of coldness created by the refrigeration unit is regulated by the variation in the amount of heat applied to the generator.

The witness Lee was well qualified and his testimony was not refuted. It established that the gas refrigerators in controversy apply energy and modify energy. When heat is applied, energy is modified and causes a cooling effect. Furthermore, motion is transmitted by the application of heat energy which produces, on percolation, a flowing of the refrigerant through the unit. These factors bring the case within the basic requisites for classification as a machine outlined in *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, as follows:

A machine is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion.

A case very much in point here was decided by this court many years ago. *Electrolux, Inc.* v. *United States*, 52 Treas. Dec. 708, Abstract 4452. The opinion of the court as reported in said abstract describes the importation as—

A device or mechanism invoiced as "1 Refrigerating Machine Elektrolux," * * *.

It was classified by the collector of customs as an article not specially provided for, in chief value of metal, and was claimed to be properly classifiable as a machine. The cited abstract gives the following description of the device:

The testimony showed that the device in question embodies a boiler which is charged with an ammonia solution which is heated either by gas or electricity to the boiling point, the resulting vapors being forced through a pipe into a condenser where they are reduced to the liquid state of pure ammonia. From the condenser the ammonia, although forced under pressure into a vessel, evaporates, thus producing a cooling effect, which the witness testified is due to the fact that the system is filled partly with hydrogen gas, which effect he stated was merely the result of the application of the so-called "Dalton law," to wit, that in the mixture of two gases each one behaves as if it were alone. The evaporated ammonia is forced into the evaporator and the separated gas into an absorber where, by means of a weak solution coming from the boiler, the ammonia is again absorbed, leaving the hydrogen gas free to circulate throughout

the system. The witness stated the net result is "we use heat, generated either by electricity or gas, and from that heat impulse we get a cooling effect; we utilize it to produce a cooling effect."

The court, accordingly, held the device to be properly classifiable as a machine, on the authority of the *Simon* case, *supra*.

For the reasons above assigned and upon the authority cited, the claim of importer that the importation in controversy should be classified as a machine in said paragraph 372, as modified, *supra*, and dutiable at the rate of 13¾ per centum ad valorem is sustained, and judgment will issue accordingly.