(C.D. 2579)

N. D. CUNNINGHAM & CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 11, 1965)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The merchandise in question is described on the entries as "REFRIGERATION EVAPORATORS—FROST FREE GAS ABSORPTION COOLING UNITS" and on the invoices as "Frost-free gas absorption Cooling Unit 912A" and "Gas absorption Cooling Units XN11." The articles were entered at the port of Mobile, Ala., by the plaintiff, a customs broker, for the account of the Norge Division of the Borg-Warner Corp. The collector classified the merchandise as articles or wares, composed of base metal, not specially provided for, within paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. Duty was assessed thereon at the rate of 19 per centum ad valorem.

The plaintiff claims that the articles in question are properly dutiable at the rate of $11\frac{1}{2}$ per centum ad valorem as machines, not specially provided for, or as parts thereof, in paragraph 372 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*. Plaintiff claims alternatively that these units are dutiable at the rate of $13\frac{3}{4}$ per centum ad valorem as articles having as an essential feature an electrical element or device within paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739.

The pertinent provisions of the statutes under consideration are as follows:

Paragraph 372 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Machines, finished or unfinished, not specially provided for:
    Adding machines_____ * * *
    Accounting machines; bakery machines; * * *:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

    Other * * *_____ 11½% ad val.

Parts, not specially provided for, wholly or in chief value of   The rate for the
metal or porcelain, of any article provided for in any     article of which
item 372 in this Part.     they are parts.

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

Articles having as an essential feature an electrical element or device, such as
electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens,
ranges, washing machines, refrigerators, and signs, finished or unfinished,
wholly or in chief value of metal, and not specially provided for:
    Batteries _____ * * *
    Calculating machines specially constructed for multiplying and
        dividing * * *

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

    Other * * *_____ 13¾% ad val.

Parts, finished or unfinished, wholly or in chief value of   The same rate of
metal, not specially provided for, of articles provided for   duty as the arti-
in any item 353 of this Part (not including X-ray tubes   cles of which
or parts thereof)     they are parts.

Paragraph 397 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Articles or wares not specially provided for, whether partly or wholly
manufactured:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

    Composed wholly or in chief value of iron, steel, copper * * *:
        Typewriter spools wholly or in chief value of tin or tin plate___ * * *
        Not wholly or in chief value of tin or tin plate:
            Carriages, drays, trucks * * *

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

        Other, composed wholly or in chief value of iron, steel, brass,
            bronze, zinc, or aluminum * * *_____ 19% ad val.

At the trial, plaintiff introduced seven exhibits in evidence. Plaintiff's exhibits 1 and 1–A were photographs of the front and rear of the 912–A gas absorption cooling unit. Plaintiff's exhibits 2 and 3 were, respectively, schematic drawings of the 912–A unit and the XN–11 unit. Plaintiff's collective exhibits 4 and 5 were diagrams from the Norge service manual depicting the 912–A and XN–11 as installed in domestic refrigerator cabinets. Plaintiff's collective exhibit 6 consisted of four photographs of the Norge refrigerators into which the gas absorption units were put. Plaintiff's collective exhibit 7 consisted of four pages from the Norge service manual, con-

taining illustrations of the automatic shut-off valve, gas controls, and burner, and pictures of the burner, temperature control thermostat, and gas pressure regulator.

Frank E. Batson, the only witness in the case, testified on behalf of the plaintiff as follows: His familiarity with the gas absorption units is a result of 26½ years' work for Servel on absorption refrigeration and absorption air conditioning in production, engineering, and quality control. Since March 1959, he has worked for the Norge Division of the Borg-Warner Corp. as a project engineer for the gas refrigerator. This task involves development, production, processing, inspection, and testing. He participated in designing the units in question. The witness testified that said units were designed for use in gas refrigerators only and in particular with the four models depicted in plaintiff's collective exhibit 6.

The gas absorption unit produces the refrigeration effect essentially as follows: At the start of a closed system, a solution of ammonia and water is heated and driven through a rectifier from which the ammonia emerges as a vapor. It proceeds thence to a condensor where it cools again to a liquid and flows to an evaporator where it is exposed to hydrogen gas. The latter exposure vaporizes the ammonia and together with the hydrogen it settles down to the absorber where it is reunited with the water from which it had originally been driven by heat. The hydrogen gas returns to the evaporator for another rendezvous with ammonia. The ammonia and water solution descends to the boiler portion to begin the circuit anew. It is in the evaporator and its environs that the actual refrigeration effect is produced.

The witness testified that the gas absorption units in question do not have moving parts. He stated further that the completed refrigerators, of which the gas absorption units are essential parts, do have moving parts. He indicated that such moving parts are the temperature control thermostat, the safety thermostat on the gas burner, and the gas pressure regulator. The temperature control thermostat maintains the temperature in the food compartment. Its sensor transmits motion to a diaphragm which, in turn, increases or decreases the gas heat at the boiler of the gas absorption unit. The safety thermostat shuts off gas flow in the event the flame is extinguished. It is a valve actuated by a bimetallic disc constructed so that a lessening of heat causes it to move and close off the gas flow. The gas pressure regulator maintains a uniform flow of gas to the burner despite pressure fluctuations in the outside gas line. It does so by means of a moving diaphragm.

The witness testified that the completed refrigerator had certain electrical features, consisting of a light, a defrost timer, a defrost heater, and the temperature regulating thermostat. According to the witness, the first three items are not essential to the operation of the

refrigerator. The light is a convenience to aid in seeing the contents of the food compartment. The defrosting of the refrigerator may be done manually. Finally, the electrical temperature control thermostat can be changed to nonelectrical by one man in 2 or 3 hours. Should the electricity fail and the temperature control thermostat cease to function, the gas burner will automatically go to full flame to maintain refrigeration.

Counsel for plaintiff first contends that the gas absorption units in question are machines. He claims to derive support from *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537, and from the holdings in both *Electrolux, Inc.* v. *United States*, 52 Treas. Dec. 708, Abstract 4452, and *Camley International Co., Inc.* v. *United States*, 43 Cust. Ct. 383, Abstract 63473. The latter two cases held that gas-operated refrigerators, functioning in substantially the same manner as the merchandise before the court, were machines within the meaning of paragraph 372 of the Tariff Act of 1922, and the Tariff Act of 1930, respectively. Plaintiff further urges that the decision in *Electrolux, Inc.* v. *United States*, *supra*, was legislatively approved by virtue of its having been brought to the attention of Congress in the Summary of Tariff Information of 1929 on the Tariff Act of 1922, schedule 3, metals and manufactures of. Subsequently, Congress enacted the Tariff Act of 1930 with the relevant portion of paragraph 372 virtually unchanged.

Though these contentions are not entirely lacking in merit, we cannot agree with the conclusions reached by the plaintiff. It must be realized that, in the matter of defining a machine, the presence of moving parts has become a *sine qua non*. This is made plain in a clear line of decisions from *United States* v. *J. E. Bernard & Co., Inc.*, 30 CCPA 213, C.A.D. 235, through *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756, and *Rosenblad Corp.* v. *United States*, 49 CCPA 81, C.A.D. 800.

In the case of *J. E. Bernard & Co., Inc.* v. *United States*, *supra*, the Court of Customs and Patent Appeals stated that "a machine such as Congress had in mind must have some movable parts, and it must do some of the things pointed out in the *Simon, Buhler* case." It will be recalled that the court, in the *Simon, Buhler* case, required that for an article to be a machine it must utilize, apply, or modify force, or be used for the transmission of motion.

As was explained in *United States* v. *IDL Mfg. & Sales Corp.*, *supra*, what the court undertook, in the *Simon, Buhler* case, was not a comprehensive definition of the term "machine" but rather a delineation of just enough of that definition to justify the exclusion of the article there before the court from the scope of that term. Thus, when the court, in the *Electrolux* case, relied on *Simon, Buhler* and

said *Electrolux* case was, in its turn, included in the Summary of Tariff Information of 1929, seemingly, an incomplete approach to the meaning of "machine" was perpetuated. These cases cannot be used to overcome a later, fully developed, and more comprehensive definition set forth by the Court of Customs and Patent Appeals which requires that a machine contain moving parts.

Moreover, a close examination of the *Electrolux* abstract, *supra*, leads to the conclusion that legislative approval of the points contended for by the plaintiff did not take place. The abstract stated only that the device in question embodied a unit (resembling the one in question here). Those elements of the device other than the gas absorption unit are not described or discussed, despite the fact that it was the entire device which was found to be a machine. We have no way of knowing whether moving parts were present or whether consideration was given to this point. The presentation of such a summary account to Congress cannot fulfill the requirements for the commencement of legislative ratification. Similarly, in *W. E. Sellers, etc.* v. *The Cronite Co., Inc.*, 45 CCPA 27, C.A.D. 668, the court stated that Congress was not charged with knowledge of facts not apparent on the face of opinions or completely missing from opinionless abstracts. This same point was brought out in *Cunard Steamship Co., North German Lloyd* v. *United States*, 22 CCPA 615, T.D. 47605, where the court found that the principle contended for was not apparent in the case claimed to have been legislatively approved. In *Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, C.D. 2148, the court found that two abstracts were reported so briefly that they could not be said to have given Congress a clear-cut indication of their purport. Due to the incomplete nature of the *Electrolux* abstract and also to the incomplete *Simon, Buhler* concept of "machine" which it perpetuated, we are convinced that the contention that a gas absorption unit such as that at bar is a machine was not legislatively approved.

We conclude, therefore, that the instant gas absorption units are not in themselves "machines" within paragraph 372 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*, since they do not contain moving parts. See *Highway Cruisers* v. *United States*, 50 Cust. Ct. 1, C.D. 2380.

Plaintiff next contends that the imported gas absorption units are, nevertheless, classifiable within paragraph 372 as parts of machines. This contention calls for an examination of the completed refrigerator to determine whether it has any moving parts. As we mentioned, plaintiff's witness testified as to three elements present in the completed refrigerator which he termed moving parts. It is for this court to decide whether these elements are such parts as are needed to bring the completed refrigerator within the term "machine" of paragraph 372.

In the case of *Highway Cruisers* v. *United States, supra,* the court determined that the safety thermostat was not such a part. It is not necessary for us to go into a detailed examination of this element, inasmuch as we consider the determinative device in this case to be the temperature control thermostat. This device is open to none of the objections which militated against finding that the safety thermostat, in the *Highway Cruisers* case, was a "part." The temperature control thermostat in the instant case functions continuously in the normal course of the refrigerator's operation. Its role is not incidental (as the court felt was that of the safety thermostat in the *Highway Cruisers* case, *supra*), but rather it is essential to the proper, efficient, and continuous operation of the refrigerator. The testimony reveals that the temperature regulating thermostat maintains the temperature inside the food compartments within certain prescribed limits. This insures that the food will not be subject to excessively high or low temperature. The temperature regulating thermostat can be controlled by the user of the refrigerator by means of a dial or knob under the food compartment. This device directly promotes or inhibits the refrigerating action of the gas absorption unit. Consequently, it is our opinion that this device makes a direct contribution to the ultimate purpose for which the refrigerator is designed. *Highway Cruisers* v. *United States, supra,* recognizes this as a criterion for determining whether an object is such a part as is needed to bring an article within the term "machine" in paragraph 372.

We are mindful of the fact that the refrigerator can produce a refrigeration effect without the temperature control thermostat; though it is by no means certain that it can do so for an extended period of normal function. Clear testimony indicates, however, that the refrigeration effect thus produced would not be a useful one, inasmuch as proper unvarying temperatures could not be maintained. Uncontrollable refrigeration is no more the ultimate purpose of a refrigerator than uncontrollable locomotion is the ultimate purpose of an automobile. In each case, those devices which regulate the process in question and make it useful must certainly be considered essential to the operation and utilization of the completed article. When such devices are specifically dedicated to the use in question they are correctly designated as parts.

Relevant in this connection is *Gallagher & Ascher Company* v. *United States,* 52 CCPA 11, C.A.D. 849. In that case, the court found that auto heaters, dedicated to use in automobiles and having no other use, were parts of automobiles, although the vehicles could operate without them. The heaters were found to serve a useful purpose with respect to the safe, efficient, and comfortable operation of the automobiles. Cited in that case was *United States* v. *Bosch Magneto Co.,* 13 Ct. Cust. Appls. 569, T.D. 41434, in which lamps and horns were found

to be necessary to the efficient, safe, and proper operation of automobiles and, consequently, were there held to be parts thereof.

It appears that the temperature control thermostat under discussion is controlled by electrical means. This is not sufficient to bring the completed refrigerator within paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as an article having as an essential feature an electrical element or device. The witness testified that nonelectrical controls can be substituted by one man in 2 or 3 hours. We consider this to mean that the substitution can be made without substantial modification or reconstruction of the refrigerator. When this is the case, the rule is that the article is not one having an essential electrical feature. In *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714, a cocoa liquor grinding mill, which could be operated by nonelectric power, was held not to be an article having an essential electrical element. In *Keer, Maurer Company* v. *United States*, 48 Cust. Ct. 205, C.D. 2336, the substitution of nonelectric features in a machine used in making windowed envelopes could be made without substantial modification or reconstruction. Consequently, the machine did not come within paragraph 353.

In sum, the refrigerators, into which the gas absorption units are installed, are machines. They utilize, modify, and apply a force by converting the energy supplied by heat into a cooling effect. They also possess a moving part in the form of a temperature control thermostat. As such, they are within the definition of "machine" as it has been developed in customs law. *Simon, Buhler & Baumann, Inc.* v. *United States, supra; United States* v. *J. E. Bernard & Co., Inc., supra; United States* v. *IDL Mfg. & Sales Corp., supra; Rosenblad Corp.* v. *United States, supra;* and *Highway Cruisers* v. *United States, supra.*

Undisputed testimony in the case at bar has established that the gas absorption units are essential parts of the refrigerators discussed above and are dedicated to use in them. It follows from this that the units are parts of machines.

Finally, the plaintiff relies on the presumption of correctness attaching to the collector's classification to the extent of demonstrating that the gas absorption units in question are in chief value of metal.

Accordingly, we hold that the gas absorption units in question are parts of machines, not specially provided for, dutiable at the rate of 11½ per centum ad valorem as provided for in paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, *supra*. The claim in the protest to that effect is, therefore, sustained. All other claims are overruled.

Judgment will be entered accordingly.