(C. D. 208)

H. J. MAYER & SONS CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 5, 1939)

*Curtis E. Loehle* for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: These are suits against the United States, arising at the port of Chicago, brought to recover certain customs duties alleged to have been improperly exacted on particular importations invoiced as hydraulic brine pumps, gum bags, finger pressure valves, and pointed, bent, and vein needles. Duty was levied thereon

at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 27½ per centum ad valorem under paragraph 372 of the said act as machines and parts thereof not specially provided for.

At the hearing held at Chicago on February 16, 1939, the plaintiff offered in evidence the testimony of Herman J. Mayer, secretary and treasurer of the plaintiff corporation. No evidence was offered by the Government.

The said witness testified that he was thoroughly familiar with the merchandise at bar, and that the illustration on the outside cover of an advertising circular issued by his company, and admitted in evidence as Illustrative Exhibit A, was a correct illustration of the hydraulic brine pump in question as set up after importation, the same having been shipped in a knocked-down condition. As to the operation of the pump, he testified as follows:

By Mr. LOEHLE:

Q. Now, I show you Illustrative Exhibit A·and ask you to describe to the court just exactly how this apparatus works and what functions it performs?—A. Well, the function of this pump is through the action of a rubber bag, actuated by water pressure. The pickle is placed in the top of the bag, and through regulation of water pressure it is forced through the holes and into the needles, and from there into the ham or whatever product is to be processed.

Q. Just where in Illustrative Exhibit A is that rubber bag located?—A. It is located in the top section marked "C."

Q. Yes, and the pickle is in that rubber bag?—A. Right.

Q. What function does the apparatus perform?—A. Well, now, do you mean as far as its actual use is concerned?

Q. Yes.—A. It is used for the placing of brines in ham, bacon, and corned beef.

Q. How does it do that?—A. It does that through the mechanical operation of the water on the rubber bag, through various gauges—I should call it a valve, two valves, one marked "A" and one marked "B" on this exhibit.

Q. You say the mechanical energy of the water. What do you mean? The water pressure?—A. Yes.

Mr. WEIL. Objected to and I move that the answer be stricken out.

Judge KEEFE. Overruled.

Mr. WEIL. Exception.

The WITNESS. The water pressure; the water pressure controlled through two valves.

By Mr. LOEHLE:

Q. In the apparatus illustrated by Exhibit A?—A. Correct.

Q. Please explain how it controls this water pressure, and what the purpose of controlling it is?—A. The purpose is that you might have a city pressure of 70 pounds; your safe pumping pressure for hams and bacon would be 10 to 30 pounds, so consequently through the one valve the amount of water which is allowed to enter is controlled, which consequently controls the pressure.

\*          \*          \*          \*          \*          \*          \*

By Judge KEEFE:

Q. The purpose of the valve is to reduce the pressure of the water?—A. Yes, without rupturing the arteries; then there is an air vent.

By Mr. Loehle:

Q. How indicated?—A. By the letter "B," which, as the water pressure is built up, allows the constant pressure on the top to be released. Those are the two valves on here which control the regulation.

Q. Now, suppose you had the device like Illustrative Exhibit A installed at a place where there was little or no water pressure. Then how would it operate?—A. In that case, it would be necessary to get a pumping apparatus to build up the pressure.

\*     \*     \*     \*     \*     \*     \*

By Mr. Loehle:

Q. Does this device, Illustrative Exhibit A, modify energy?—A. Yes.

Q. What energy?—A. Water.

Q. Energy of water pressure?—A. Yes.

On cross-examination he testified in part as follows:

X Q. Let's take the instance of where the water is obtained from the city. Is that obtained by a tap from the water in the city?—A. In very few cases; in most cases, it is obtained from storage tanks on the roof.

\*     \*     \*     \*     \*     \*     \*

X Q. And the water is up there and comes down to this apparatus?—A. Correct.

X Q. And that water goes into more or less of a chamber?—A. Right.

X Q. And this water has a certain amount of pressure?—A. Right.

X Q. As a result of coming down from the roof?—A. Right.

X Q. That is known as gravity, isn't it?—A. Correct.

X Q. When water gets into the chamber it may be going at a greater speed or have a greater pressure than desired?—A. Yes.

X Q. And the function of the valve is to moderate or to reduce the amount of pressure or energy or gravity of water to the desired amount?—A. Correct.

X Q. And then this water is caused to press against a rubber diaphragm; is that correct?—A. Right.

\*     \*     \*     \*     \*     \*     \*

X Q. So when water presses on the rubber diaphragm, it minimizes the space in which the brine is?—A. Right.

X Q. And forces the brine to flow; isn't that the way it works?—A. That is it, perfectly.

X Q. And this pressure, in most instances, is obtained by gravity; is that right?—A. Not in most instances; say 50–50.

X Q. And in other instances how is it obtained?—A. It is obtained through pumping apparatus, as I have explained before.

X Q. Of the city?—A. No, no; of the packer himself.

X Q. That entails additional apparatus?—A. They work together; it is pumped into your tank and then forced down through your gravity system.

X Q. But the machine involved in this case wasn't imported with that pump?—A. No, sir.

The witness' redirect examination being stricken on objection by counsel for the Government, the witness on recrossexamination testified as follows:

R. X Q. You have seen a water faucet, haven't you?—A. I hope I have.

R. X Q. And that modifies the flow of water? You can either make water come out fast or slow?—A. That is right.

Upon this record counsel for the plaintiff contends that the hydraulic brine pump which, according to the uncontradicted testimony, is faithfully pictured by Illustrative Exhibit A, and of which all the other articles constituting the imported merchandise are either parts or spare parts, is a machine within the definition laid down by the United States Court of Customs Appeals in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537. On the other hand, counsel for the Government contends that the hydraulic brine pump in question is not a machine within said definition, and in support of his contention quotes at length from a decision of the United States Court of Customs and Patent Appeals in the case of *United States* v. *Klingerit, Inc.* 17 C. C. P. A. 472, T. D. 43931.

In our opinion, however, the instant case is distinguishable from the last-cited case in that the action of the hydraulic brine pump herein is automatic, whereas in the cited case the valves, like the faucet referred to by counsel for the Government in his brief filed herein, were operated by hand. Moreover, the hydraulic pump in the illustration has a gauge which involves a moving part in addition to the automatic movements of the diaphragm inside of the hydraulic brine pump.

It would seem, therefore, that the hydraulic brine pump in question is a mechanical device for utilizing, applying, and modifying the energy or force of water pressure for the transmission of motion. It is therefore within the definition of a machine as laid down by the appellate court in the case of *Simon, Buhler & Baumann (Inc.)*, *supra*.

Upon the entire record, including Illustrative Exhibit A, we therefore hold as a matter of law that the merchandise herein is properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372, as a machine and parts thereof not specially provided for, as alleged by the plaintiff. That claim is therefore sustained, but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.