No. 69260.—Mannesmann-Meer, Inc. *v.* United States, protest 61/24165 (New York).

FORD, Judge: The dutiable classification of certain imported merchandise, identified on the invoice as "2 Hydraulic High Pressure pumps DD 9," is contested by the plaintiff herein.

The pumps were classified by the collector of customs under paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, or parts thereof. Duty was assessed thereunder at the rate of 13¾ per centum ad valorem.

The plaintiff contends that the aforesaid pumps are classifiable as other machines, not specially provided for, under paragraph 372 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and should be assessed with duty at the rate of 11½ per centum ad valorem.

At the opening of the trial, the plaintiff abandoned that part of its protest which related to the item described on the invoice as a set of spares for a metal powder press, leaving in issue only the proper classification of the aforesaid hydraulic pumps. The protest is, accordingly, dismissed as to this merchandise.

The basic issue is whether these pumps have as an essential feature an electrical element or device within the meaning of paragraph 353 of the tariff act; or if they should be classified as "parts" of such a machine having as an essential feature an electrical element or device.

The pertinent text of the Tariff Act of 1930 concerned herein is as follows:

Merchandise assessed under:

Paragraph 353, as modified by T.D. 52739:

Articles having as an essential feature an electrical
element or device, * * * :

| * | * | * | * | * | * | * |
| Other (* * *) | | | | | | 13¾% ad val. |

| Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (* * *). | The same rate of duty as the articles of which they are parts. |

Importer claims under:

Paragraph 372, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

| * | * | * | * | * | * | * |
| Other (* * *) | | | | | | 11½% ad val. |

Examination of Joseph Gaus, the sole witness for the plaintiff, comprised the record of testimony in the instant case. Qualifications of the said witness were adduced by counsel for the plaintiff and thereafter he was questioned on cross-examination by defendant's counsel.

The witness stated that, since 1955, he was a special assistant to the vice president of the plaintiff corporation, manufacturer and builder of tube mill machinery. He had been working generally in connection with engineering and machine design work for 7 years and had always been connected with that type of work since 1935. He had attended Connelley Trade School in Pittsburgh, Pa., for 5 years.

Describing the pump and explaining its operation and function, the witness stated that it was approximately 7 inches in diameter and 12 to 14 inches in length; that the function of the pump was to convert mechanical energy to

hydraulic energy for transmission to the varied operations of presses. It pumps hydraulic fluid, which can be either basic oil or the synthetic fluids. It performs its function of a pump by the rotation of a shaft extending through the end cover of the pump case, driving an offset cam. This cam, in turn, is connected to nine pistons, which are held in relation to each other in a cylinder body, which is bored to a size to receive the pistons. The pistons are similar to those used in an automotive engine, only they have a slightly different design, a much smaller reciprocate in the body. As the main shaft is rotated, it turns the cam which causes the horizontal or linear position of the pistons in the cylinder body, by suction, to receive oil on one side of what is called a valve plate while the pistons are in furthermost position. As the pistons return, oil. is sucked from the reservoir into the piston cylinder chamber which, in turn, by rotation of the cam, will push the piston back out into the cylinder, which then changes the displacement and discharges the oil through the pressure chamber of the pump, discharging it to the system.

The witness went on to state that the pump obtained its power through a pulley drive and that it could be used for different types of machines for other purposes, such as plastic extrusion presses, in powdered metal presses, and in conjunction with hydraulic motored drives on certain injection molding machines. He stated that he was testifying from actual observation.

Cross-examination by Government counsel added further to the description and operation of the machine. The witness stated that the pump was bolted to the press, on the side of an oil reservoir, about 2½ feet above the base line of the reservoir. The function of the pump was to supply fluid power under pressure. He stated that the pump was essential to the working of the powder press and that the press worked on an electrical time sequence control system.

On redirect examination, the witness stated that the powder press required a pump, and that not only this particular pump, but others and different types could be used.

The first question herein presented for the court's consideration is whether the imported merchandise, the hyrdaulic high pressure pumps, are "parts" of a machine or article have as an essential feature an electrical element or device, within the meaning of paragraph 353 of the tariff act, as modified.

Secondly, if it is not such a part, does the involved pump have as an essential feature an electrical element or device?

On the subject of "parts," the first question presented herein, we find the recent case of *Gallagher & Ascher Company* v. *United States*, 52 CCPA —, C.A.D. 849, in which other earlier pertinent cases on parts are discussed.

In the *Gallagher & Ascher Company* case, *supra*, certain imported auxiliary heaters for Volkswagen automobiles were classified under paragraph 353, *supra*, as "Articles having as an essential feature an electrical element or device * * * such as heaters * * *." Appellant contended that the auxiliary heaters should have been classified as parts of automobiles. Briefly, the factual situation as found from the record indicated that the conventional automobile heater provided heat only when the engine was running and after the engine had generated heat, which was blown by air over the warm engine and conducted into the occupied portion of the vehicle. Apparently, the conventional heater did not provide sufficient heat for heating, defrosting, etc., for the safe operation in certain colder climates, so that another, an auxiliary heater (the imported merchandise), was installed in the vehicle. This auxiliary heater operated on a different principle. On installation, it required a separate fuel line, running to the fuel tank, and an electrical switch from the panel connecting with the electrical system of the car. This auxiliary heater functioned independently of the automobile engine and could produce heat whether the engine was running or not.

The appellate court, in arriving at its decision, gave little weight to the electrical feature of the auxiliary heater, or to the fact that the automobile could be operated without it, or that there already was a conventional heater and that the imported heater was optional. These facts were not of such vital import as to be determinative of the issue. Using the words of the court, "When once attached to the automobile to which it was solely dedicated * * * for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified."

In the *Gallagher & Ascher Company* case, *supra*, the appellate court referred to *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851; *United States* v. *Antonio Pompeo*, 43 CCPA 9, C.A.D. 602; *United States* v. *Carl Zeiss, Inc.*, 24 CCPA 145, T.D. 48624; *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T.D. 42472; *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758. All of the foregoing cases have been examined.

The plaintiff cites *Davies Turner & Co.* v. *United States*, 13 Cust. Ct. 190, C.D. 893, and numerous cases thereunder. The court, in the *Davies Turner* case, *supra*, stated that a part must have been manufactured and dedicated solely for use on a particular article and to be useful for no other purpose. Such was the fact in *United States* v. *Herman H. Sticht & Co.*, 22 CCPA 40, T.D. 47048, wherein the merchandise was a certain indicator for attachment to a transmitter of a radio telegraph apparatus. The testimony showed that the indicator was essential to the proper functioning of the apparatus and that it was useful for no other purpose. It was held properly dutiable under paragraph 353. This, is distinguishable from the factual situation in the instant case. The witness herein testified that the pumps were suitable for various purposes, for any type of hydraulic system. Obviously, the pumps were not parts manufactured and for use with a particular machine. The involved pumps are, therefore, in our opinion, not parts for tariff purposes of any article provided for in paragraph 353, *supra*. *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831.

On the second question, we find *United States* v. *Baker Perkins, Inc., R. F. Downing Co., Inc.*, 46 CCPA 128, C.A.D. 714, and other cases cited therein. They furnish pertinent light on the subject in hand.

In the *Baker Perkins* case, *supra*, the imported merchandise, described as a "Cocoa Liquor Grinding Mill" and two sets of "Finishing Discs," was used to grind cocoa nibs, which are the meat of the cocoa bean, a step in the manufacture of chocolate. The machine occupied a floor space of about 4½ by 6 feet and was about 9 feet high. A V-belt drive connected the mill to a prime mover, not part of the importation, through the usual pulleys. In that case, the importers intended to use a 40-horsepower electric motor for motive power.

The appellate court, in the *Baker Perkins* case, *supra*, stated:

* * * The mere contemplation of the use of electric motive power is not sufficient to constitute the machine an article having as an essential feature an electrical element under paragraph 353.

The fact that, from a practical, commercial standpoint, electricity was the only motive power that might be employed for the operation of the mill was not the controlling factor particularly where there was a drive shaft to which a pulley was attached. To do so would encompass any article having a pulley or sprocket within the purview of paragraph 353, *supra*. If the article, when and as imported, may use any other power interchangeably, then it has not, as an essential feature an electrical element or device to bring it within the purview of paragraph 353.

In the instant case, we have a somewhat parallel description of the machine in which the hydraulic pumps were used. It is to be noted that the merchandise,

as imported, did not contain an electric motor but merely a shaft or pulley, which was to be motivated by an electric motor. Since, as indicated above, a pulley might be motivated from any power source, the electric motor motivating the pulley is not the controlling factor in classifying these imported pumps for tariff purposes.

There was one further element brought out on cross-examination in the instant case. There was a certain electrical time sequence control system in the press, which operated automatically when required. However, the witness stated that this was a part of the press, not of the pump. Since the pumps are not parts, having other uses, it is immaterial that the press had an electrical feature.

Based upon the record and for the foregoing reasons, we hold that the hydraulic high pressure pumps involved herein are not parts of a machine or articles having as an essential feature an electrical element or device, within the purview of paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, and that they are dutiable as other machines, not specially provided for, under paragraph 372 of the said tariff act, as modified by T.D. 54108, at the rate of 11½ per centum ad valorem.

To the extent indicated by the record, the protest is sustained. Judgment will be entered accordingly.