(C.D. 2639)

VICTORIA DISTRIBUTORS, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided March 28, 1966)

*Allerton deC. Tompkins* for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Arthur H. Steinberg*, trial attorney), for the defendant.

Before RAO, FORD, and NICHOLS, Judges;
RAO, C. J., concurring; FORD, J., dissenting

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of hand operated air pumps and parts

of the type commonly known as bicycle pumps. They were assessed with duty at 19 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as articles of metal, not specially provided for. It is claimed that they are properly dutiable as machines, not specially provided for, or parts thereof under paragraph 372 of said tariff act, as modified, *supra*.

The pertinent provisions of said paragraphs of the tariff act, as modified, *supra*, are as follows:

[Par. 397.] Articles or wares not specially provided for, whether partly or wholly manufactured:

  \*        \*        \*        \*        \*        \*        \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

  \*        \*        \*        \*        \*        \*        \*

Not wholly or in chief value of tin or tin plate:

  \*        \*        \*        \*        \*        \*        \*

Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*)_\* \* \* 19% ad val.

[Par. 372.] Machines, finished or unfinished, not specially provided for:

  \*        \*        \*        \*        \*        \*        \*

Other (except \* \* \*)_____ \* \* \* 11½% ad val.

Protest 63/12153 covering merchandise entered in September and December 1961 claims a rate of 11½ percent, and protests 63/12167 and 63/19583 covering merchandise entered in September 1962 and March 1963, respectively, claim a rate of 10½ percent. The schedule in annex S of T.D. 55615, effective July 1, 1962, T.D. 55649, carries a rate of 10½ percent for other machines under paragraph 372, but excepts pumps, and the schedule in annex A to Presidential Proclamation No. 3513 of December 28, 1962, T.D. 55816, carries a rate of 10½ percent for other machines under paragraph 372 and also excepts pumps. In his opening statement, counsel for the plaintiff claimed the proper rate of duty to be 11½ percent or 10½ percent, depending upon the date of entry. In the brief, the rate of 11½ percent only is mentioned. Defendant's brief states that the rate of 10½ percent for other machines in T.D. 55615 was in effect on the date of entry of the merchandise covered by protests 63/12167 and 63/19583.

Protest 63/12167 was abandoned with respect to the merchandise described on the invoice as "100—SKS—Racing-pumps, with valve for Schrader."

The record consists of the oral testimony of Dr. Ernst Reyersbach, president and general manager of the plaintiff company, and six exhibits.

Plaintiff's collective exhibit 1 represents a number 625/1 or a number 625 pump. It is about 2 feet high and has a stirrup-shaped base. It has a hose with a thumb-lock connection on one end and a valve on the other.

Exhibit 2–A represents the hose portion of pump number 501. It has a valve on one end and a screw-on connection on the other. It also represents the article designated as No. 11 on the invoice in protest 63/19583.

Collective exhibit 3 represents a number 503 pump. It is similar to exhibit 1 except that the base has flat extensions on opposite sides instead of being a stirrup-shaped base and the hose is a little longer.

Exhibit 3–A is the hose for the number 503 pump. It has a thumb-lock connection.

Collective exhibit 4 represents a number 499 pump. It is a smaller pump with a flat base extension on one side. It operates in the same way as exhibit 1 except that the hose has a screw-on connection. It also represents the article designated as No. 21 on the invoice covered by protest 63/19583.

Illustrative exhibit 5 is a catalog picture of the barrel portion of a number 115 pump. It works the same way as pump number 499, but it is carried on the bicycle in two parts and the pump hose is inserted in the handle.

Dr. Reyersbach testified that he had bought and sold these particular pumps and has seen them used and knew how they operated. They are used to inflate inflatable items, such as automobile tires, bicycle tires, tubeless tires, swimming pools, and footballs. The pump hose is connected to the valve of the article to be inflated by either the thumb-lock or screw-on connections at the end of the hose. The handle of the pump is raised and air enters the pump barrel through the air intake holes at the top. The handle is connected with a rod which is in the inside of the pump, at the end of which are a leather washer, a metal plate, and a spring. The latter prevents the washer from coming too close to the top of the pump barrel. When the handle is depressed, air pressure is created in the barrel and the air is pushed down the barrel through the hose and into the article being inflated. The air-check valve in the hose prevents the air in the inflated article from returning to the pump when the handle is raised again. The valve closes as soon as pressure comes back from the inflated object.

The handle is pulled up and down repeatedly until the desired air pressure is created in the article being inflated. Then the thumb-lock or screw-on connection has to be removed.

The thumb-lock connection has a little pin in the inside which is needed to depress the spring in the "Schrader" valve which is used on tires. The pin is activated by depressing the lever of the thumb lock. That makes it possible for the air to get into the tube because the "Schrader" valve normally seals the tube. The thumb lock also serves as a clamp to hold the hose to the valve of the article to be inflated. The lever of the thumb lock has to be brought up manually but it will snap back after it is given a push. The thumb piece does not magnify or increase power when it is operated; it makes it possible for the air to enter the object.

The basic function of the pumps is to push air along the chamber and out through the opening at the end of the hose. The amount of air pushed depends on the size of the barrel of the pump. The amount of air pressure outgoing would be in direct ratio to the rapidity with which the handle is operated.

Until this case came up, the witness never heard an air pump referred to as a machine; it is not commonly called a machine in the trade, but a pump.

According to the witness, the pumps utilize air pressure in their operation by compressing the air through the apparatus into the object. He did not know how much pressure was created. At the trial, he closed off the thumb-lock connection of one of the exhibits and depressed the handle. He said this showed pressure was created because when he removed his thumb, air came out. When the handle was depressed without closing the thumb lock, it required less exertion and air came out with considerable force and a hissing noise. Exhibit 4, a pump with a screw-on connection, was operated in the same way and a loud noise was emitted when the handle was depressed.

The pumps before the court serve the same purpose as the commonly known garage air pumps. The latter use stored compressed air to fill tires, and operate more easily than the former, which require the manual production of compressed air. Manual energy is used in operating the pumps to create the compression and transmit the air to the tire.

The issue in this case is whether these pumps are "machines" within the meaning of paragraph 372 of the Tariff Act of 1930, as modified. A similar issue was before this court in *United Merchandising Corp. and Frank P. Dow C., Inc.* v. *United States*, 42 Cust. Ct. 396, Abstract 63100. That case involved air pumps used for inflating air mattresses, liferafts, and all kinds of inflatable objects. A witness testified that they operate "by hand on the principle of forcing air into an inflatable

object. A flutter valve in the fitting at the end of the pump closes when the handle is drawn back so as to prevent the air, in the object being inflated, from reentering the pump. This action is caused by the spring contained in the unit." The court held that they were not machines on the ground that pushing the handle forward did not create any motion as in the sprays involved in *Emil Gebhardt* v. *United States*, 66 Treas. Dec. 983, Abstract 28998, and *Same* v. *Same*, 56 Treas. Dec. 834, Abstract 9786, and that the presence of the flutter valve, which prevented the air in the inflated object from being forced back into the pump, did not make the merchandise a machine, citing and quoting from *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 236, C.D. 2046.

Plaintiff claims that *United Merchandising Corp. and Frank P. Dow Co., Inc.* v. *United States, supra* (hereinafter referred to as Abstract 63100), is not decisive here on the ground that the decision was handed down before the following cases were decided by the court of appeals: *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786; *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820.

*United States* v. *IDL Mfg. & Sales Corp., supra*, involved hand-operated paper punches which the court described as follows (p. 18):

* * * They consist mostly of sheet-metal stampings, each contains two punching dies normally held open by a spring, and the dies are closed to punch holes by the manual operation of a member which acts on the dies as a lever, multiplying the applied force by two in the case of one model and by five in the case of the other. Actuation by hand to punch holes compresses the springs and the dies therefore open automatically when the pressure is released.

The court in its opinion discussed many cases involving items held to be or not to be "machines." It said (pp. 23–24):

* * * While many items have been held to be, or not to be, "machines," there is no "judicial determination" of what a machine is. It remains simply a question of common meaning and each case must be decided on the basis of its own facts, technical and legislative.

In the present case the merchandise goes by the name of paper punching machines. It falls within the median definitions of "machine" to be found in dictionaries so that one need not apply an extreme definition to include these punches in the term. For example, the definition from Webster's New International Dictionary, referred to in the *Laing* case, supra, at p. 238 and the *Guth* case, supra, at p. 248, defines "machine" briefly as follows:

Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion, may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; * * *.

The same appears in the latest (1956) edition.

Furthermore, and as an additional reason for our decision, we think the paper punching machines at bar are very like stapling machines in their nature and use, punching holes in paper, as a hand operation, as compared to similarly inserting staples in paper. Stapling machines were held, in *T. D. Downing & Co.* v. *United States*, 52 Treas. Dec. 560, Abstract 3762, to be dutiable as "machines" under the corresponding paragraph of the Tariff Act of 1922. Congress knew of that decision, through the Summary of Tariff Information—1929, when it passed the 1930 Act and retained the provision substantially unchanged. We think this at least shows approval of the classification as "machines" of devices quite similar to those at bar.

*Nord Light, Inc.* v. *United States, supra,* involved a complicated "pulley" used in suspended cable reels for the adjustable vertical suspension of an object such as a lighting fixture. The court described the operation as follows (p. 15):

The retraction of the cable and the raising of the "pulley" along the cable are automatic functions of the "pulley" mechanism and is the purpose for which it was designed. The automatic function results when the energy stored in the spring by the downward pull on the cable is released by a removal of such portion of the weight of the suspended object as is necessary to permit rotation of the spool by the action of the spring.

The court held the device to be a machine, stating that there was no requirement that to be a machine, it must be "self-activating." In the course of the opinion, the court said (p. 15):

A common meaning of the word "machine," found in the dictionaries which we referred to in the *IDL* case, supra, is a device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction, or to change one form of motion or energy into another form. * * *

This statement was quoted in *The Durst Mfg. Co., Inc.* v. *United States, supra,* which involved rotary lawn sprinkler tops claimed to be parts of machines. The court held that they were, stating (p. 61):

* * * On the basis of the testimony, and in accord with commonly known principles of elementary physics, the energy in the moving stream of water is applied to the sprinkler head to cause it to rotate. The outward motion of the water from the nozzles produces, by reaction, rotary motion of the mechanical device. The rotary motion of the sprinkler acts, in turn, on the moving stream of water to distribute it over the desired circular area. The energy of the water is converted by the sprinkler into mechanical motion, making a small water motor out of the sprinkler head which does useful work in distributing the water where it is wanted. * * *

Some observations in *The Durst Mfg. Co.,* case, *supra,* at page 60 and ff., suggest it would unduly risk a reversal for this trial court to

follow its former decision, Abstract 63100, interpreting paragraph 372, made prior to the three cases plaintiff relies on, without reexamining *de novo* the basis of that decision in light of our appellate court's pronouncements.

A reference to the papers in the said abstract decision shows that nothing was done to call the court's attention to "facts—legislative," (in the words of *IDL Mfg. & Sales Corp., supra*), which would seem highly pertinent. They were, accordingly, not considered. Since we are not to rely on any judicial definitions of "machine," *IDL Mfg. & Sales Corp., supra*, legislative history acquires even more compelling weight than it would otherwise have.

The reference to "facts—legislative" in *IDL Mfg. & Sales Corp., supra*, was undoubtedly made in light of an earlier decision of the same court that an article, it otherwise would not have classed as a "machine," a safety razor sharpener, was a "machine" for tariff purposes by reason of a decision so holding by the Board of General Appraisers having been called to the attention of the Congress in the summary discussed below. *United States* v. *Guth Stern & Co., Inc.*, 21 CCPA 246, T.D. 46777. This is a dramatic illustration of the doctrine of legislative ratification; the decision of an inferior tribunal is placed before the Congress, which reenacts the interpreted statute without change, and thereby the decision becomes binding on a superior tribunal, even if wrong. Also a decision of the Board of General Appraisers holding a conventional type automobile jack to be a machine: *C. F. Osmers Co.* v. *United States*, 47 Treas. Dec. 904, Abstract 48549, was referred to in the same summary and, therefore, held "persuasive" in *United States* v. *Dyson Shipping Co., et al.*, 29 CCPA 148, C.A.D. 184.

Webster's New International Dictionary defines a pump as:

A device or machine that raises, transfers, or compresses fluids or that attenuates gases, esp. by suction or pressure, or both.

Numerous varieties of pump are listed. Air pumps are also stated to include many varieties.

The Summary of Tariff Information of 1929, schedule 3, Metals and Manufactures of, contains frequent mention of pumps in its discussion of paragraph 372, of the 1922 act. It says that under "all other machines or parts, not specially provided for," are included "pumping equipment." (P. 837.) A compilation of export statistics on the next page includes within "miscellaneous machinery," "Pumps and pumping equipment"; also "Pneumatic machinery" which may have included air pumps and "oil-well machinery" which undoubtedly included oil pumps. This compilation was inserted in the Congressional Record during the debates. Congressional Record, volume

71, part 5, pages 5370–5371. Under "Decisions" at page 842, the summary refers to two decisions; Abstracts 4726 and 5617, holding "bilge (hand) pumps for boats" to be machines under the 1922 act. The published decision in Abstract 4726, *Geo. S. Bush & Co.* v. *United States*, 52 Treas. Dec. 761, describes the article more fully, stating that a handle operating as a lever actuated a brass rotor within a metal chamber. Two hinged outlet valves were forced open and shut by the "resulting reciprocating semi-rotary action." The pumps in Abstract 5617, *B. R. Anderson & Co.* v. *United States*, 53 Treas. Dec. 952, are described only as "hand pumps." The papers show that counsel stipulated them to be similar in all material respects to the ones in Abstract 4726. The same summary also, of course, refers to the stapling machine case, *T. D. Downing & Co.* v. *United States*, 52 Treas. Dec. 560, Abstract 3762, relied on by our appellate court in *IDL Mfg. & Sales Corp., supra*, the razor sharpener case of *Guth Stern & Co., Inc., supra*, the automobile jack case cited in *Dyson Shipping Co., supra*, and a long list of other decisions involving articles large and small, simple and complex, all held to be machines. This part of the summary is too long to quote and should be read in full by anyone who wants to appreciate the wide range of devices which, as the summary advised the Congress, had been classified as machines. The summary next quotes a decision of the Board of General Appraisers, *Herbert Morris (Inc.) et al.* v. *United States*, 48 Treas. Dec. 376, T.D. 41196, reading in part as follows (p. 377) :

*We do not know that Congress intended to use the word "machine" in other than its common and ordinary meaning. Nor are we aware that there is a different commercial understanding of the term.* It may be that the department feels that the law contemplates only those mechanisms the commercial designations of which include the word "machine." But this board is not prepared to hold that Congress intended to exclude from the provision, for instance, all engines, pumps, motors, dynamos, printing presses, hydraulic drills, cream separators, cash registers, and an infinite variety of other mechanisms, merely because they may not be known commercially as machines or, rather, that their respective names do not include the word "machine," although they are such in fact. [Italics supplied.]

We have added from the original volume two sentences not included in the summary for readier comprehension. They are italicized.

The many references to pumps in the summary do not distinguish among them in terms of how they operate, or their size, price, or complexity. A Congressman reading the summary would naturally have supposed that all pumps come under paragraph 372 unless specifically provided for elsewhere.

Under the 1930 act, pumps have often been held to be "machines" under paragraph 372. *United States* v. *Dyson Shipping Co., supra*

(dental chair, operator depresses pedal which pumps oil into cylinder forcing chair up; force is modified by piston and valves, pump is essential to use of chair and is substantial portion of it) ; *H. J. Mayer & Sons Co.* v. *United States*, 3 Cust. Ct. 78, C.D. 208 (hydraulic brine pump) ; *J. A. Freeman & Son* v. *United States*, 7 Cust. Ct. 94, C.D. 542 (hand pumps used to pump gasoline and fuel oil from barrels into farm tractors) ; *Karl Schroff & Associates* v. *United States*, 54 Cust. Ct. 395, Abstract 69245 (pumps which cause the movement of fluid under pressure which is directed through various valves and which fluid ultimately does useful work) ; *Mannesmann-Meer, Inc.* v. *United States*, 54 Cust. Ct. 405, Abstract 69260, rehearing granted, Abstract 69424 (hydraulic high pressure pumps, whose function is to supply fluid power under pressure). Of these cases, *J. A. Freeman & Son, supra,* involves merchandise most similar to that at bar, at any rate so far as the pumps are hand activated and portable. The exact manner of their operation is not described further. The first three of these cases preceded Abstract 63100, but neither counsel nor the court referred to them.

In view of these authorities, it could hardly be denied that a piston-type pump would be held to be a "machine" if ponderous, complex, and costly enough to impress the court with its "dignity." It utilizes, or applies, energy or force, inasmuch as the piston moves up and down only when force is applied, and the muscular force of the operator is utilized to compress air and thereby cause it to move. There is no difference in principle of operation between a pump that pumps water of the conventional piston type, and one that pumps air, such as that in Abstract 63100 and in the case at bar. The valves operate the same way to "translate" the up and down motion of the pistons into a one-way motion of the air or water to be moved. Such articles have other moving parts; the automatic valves which are an indispensible part of a piston pump to prevent the escape of the gas or fluid to be moved during the strokes. The one here involved has a valve in the piston, the leather washer, which opens on the up stroke, admitting air, and closes on the down stroke, preventing escape of the air. Another valve keeps the air that has entered the tire from returning to the cylinder on the up stroke. These are the basic elements of such a pump, large or small, expensive or cheap.

A recent decision of our appellate court is also of value to us as it develops the concept of what is not a machine. *Rosenblad Corp.* v. *United States,* 49 CCPA 81, C.A.D. 800, dealt with "Heat exchangers," intertwined separate spiral conduits for liquids by which heat could pass from one liquid to another. The determinative adverse factors were the lack of movable parts, and that the articles did not utilize, apply, or modify force; nor were used for the translation of motion.

The court refers to crowbars, pliers, kitchen colanders, and a "box of sand for cleaning water" as other examples of things not machines. The classification of pliers as not "machines" is not as obvious perhaps as the other items, but pliers are provided for *eo nomine* in paragraph 361.

We have considered also *United States* v. *Associated Mfg. Co.*, 30 CCPA 236, C.A.D. 238, but find nothing in it adverse to the position we take, assuming without determining that it is good law today. It holds that a child's tricycle is not a "machine."

Now, if there is one thing the three recent decisions of our appellate court, that plaintiff relies on, have in common, it is that an article otherwise qualifying as a machine is not to be denied that status because it is small, simple, and cheap. The articles there involved were, in *United States* v. *IDL Mfg. & Sales Corp.*, *supra*, hand paper punches of the familiar office kind, in *Nord Light, Inc.* v. *United States*, *supra*, a pulley for controlling the height of an electric fixture suspended from the ceiling, and in *The Durst Mfg. Co.* v. *United States*, *supra*, a rotating water sprinkler. In *IDL* the Government argued the paper punch was a "simple mechanical contrivance" that "did not rise to the dignity of a machine." In its reply brief, it disavowed any intent to argue that mere simplicity would prevent an article from being classed as a machine. Our appellate court said this disavowal left them "adrift" (p. 19) with no rational statement of the Government's position.

It will be noted that the summary, *supra*, included as machines, simple and cheap articles such as automobile jacks, safety razor sharpeners, stapling machines, as already referred to, and machines for putting corks in bottles. As stated above, the reference to pumps described them simply as "bilge (hand) pumps for boats." If the writer of this opinion is allowed to take judicial notice of 50 years' experience in operating small boats, he will say that articles meeting that description were in 1929–30 and now are commonly known to be generally about the simplest and cheapest—even, crudest—kind of pump there is; those in the litigation, there referred to, may have been more complex than the ordinary hand bilge pump, but this was not disclosed to the Congress in the summary, probably not being thought material. There is nothing elsewhere in the summary to suggest that as between two devices similar in their principles and mode of operation, one is a "machine" and another not because one is ponderous, complex, and costly, and the other light, simple, and cheap. There is much to suggest the contrary.

We have recently had occasion to consider how the doctrine of legislative ratification is to be applied when a Summary of Tariff

Information invites the attention of the Congress to an incomplete abstract of a decision. *N. D. Cunningham & Co., Inc.* v. *United States*, 55 Cust. Ct. 220, C.D. 2579 (October 11, 1965). With ample citation of authority, we pointed out that "Congress was not charged with knowledge of facts not apparent on the face of opinions or completely missing from opinion-less abstracts" nor when "the principle contended for was not apparent in the case claimed to have been legislatively approved" nor when "two abstracts were reported so briefly that they could not be said to have given Congress a clear-cut indication of their purport." *Cf.* also *August Bentkamp* v. *United States*, 40 CCPA 70, C.A.D. 500; and *Werner G. Smith Co., Div. et al.* v. *United States*, 40 CCPA 90, C.A.D. 503. In the *N. D. Cunningham* case, *supra*, the allegedly ratified abstract, *Electrolux, Inc.* v. *United States*, 52 Treas. Dec. 708, Abstract 4452, described the article classed as a machine, a refrigerator, but failed to state whether moving parts were present. Since the presence or absence of moving parts is now considered crucial, the abstract, relatively full for its period as it is, cannot be considered as committing the Congress to the classification of an article not having such parts. The Board of General Appraisers may have held a moving part was not required but it published nothing the Congress could ratify to that effect.

In the case of simple articles in common use, common knowledge of their attributes is assumed. Thus, to reconsider three cases cited above, *T. D. Downing & Co.* v. *United States*, *supra*, reads:

* * * the articles in question are the *usual* stapling machines and staples used for fastening together papers and leaves. [Italics supplied.]

This is the description *in toto*. The summary, *supra*, having called the attention of the Congress to this abstract in 1929, our appellate court, in the *IDL Mfg. & Sales Corp.*, case, *supra*, in language already quoted, says the Congress has approved classification as "machines" of devices "*quite similar*" to those then at bar, paper punches.

The abstract on automobile jacks, *C. F. Osmers Co.*, *supra*, describes the involved articles as follows:

The jacks in question were found to be the *well-known* mechanism used as accessories to automobiles in lifting them for an exchange of tires and like purposes. [Italics supplied.]

This was regarded in *United States* v. *George Dyson Shipping Co.*, *supra*, as "persuasive" that the Congress did not disapprove of the decision. Likewise in *G. W. Sheldon & Co.* v. *United States*, 48 Treas. Dec. 650, Abstract 49972, the description *in toto* reads:

It was found that a safety razor blade inserted in this device is

mechanically turned over four times by merely pushing back and forth a lever.

The device was probably more familiar then than it is today. This description was sufficient for legislative ratification to be found in *United States* v. *Guth Stern & Co., supra.* It will be observed that this 1929 Summary is telegraphic to a high degree in its description of general appraisers' decisions, and the published abstracts referred to themselves are no less so. If we suppose that the summary, with the abstracts, was not sufficient to inform the Congress as to the main points of law decided, then we are compelled to suppose that preparation of that part of the summary was a futile act. Accordingly, we think, *Cunningham, supra,* does not establish that the summary and the abstracts referred to were insufficient to inform the Congress in 1929 that hand bilge pumps of simple design were considered by the courts to be "machines."

Turning now to Abstract 63100, *supra,* a careful reading of it elicits no more information as to the *ratio decidendi* than our appellate court had before it as to the Government's position in *IDL Mfg. & Sales Corp., supra.* A number of cases are cited and distinguished, not those that would have been most germane, as we now view the situation, the cases having been, like the legislative history, but weakly briefed. The technique of the court appears to be, so far as it can readily be summarized, to seize on devices used in the pump, springs, and a valve, and to hold that such devices, individually, do not constitute "machines." That a machine might be made up of components that, separately considered, were not machines, is a possibility that seemingly was not in view. It is fair to say that this technique, consistently employed, could establish that any machine on earth, however large, costly, and complex, was not a machine, but the court could not have intended this.

The sample in Abstract 63100, *supra,* a "potent witness," further reveals that, like the articles at bar, the pump actually has two valves, not just one. The handle and shaft actuate a disk which moves up and down the air chamber, constituting a piston. Around the outside of the piston is a rubber or plastic ring, curving downward in cross section. When the piston moves down the chamber, the ring is forced tight against the walls, preventing escape of air upwards. The air in the chamber then has nowhere to go but into the article to be inflated. When the piston moves up, the ring disengages from the chamber wall, and outside air passes freely into the chamber around the piston.

Thus, on the up stroke, the flutter valve at the bottom of the chamber is closed and the valve on the piston is open. On the down stroke,

the valve on the piston is closed and the flutter valve is open. Both valves are equally indispensible to the operation of the pump as a pump. Yet, the testimony, the briefs, and the opinion of the court speak of the flutter valve as if it were the only one in the case.

The presence of springs in the pump involved in Abstract 63100, *supra*, received much attention by counsel and by the court. There are likewise springs in the merchandise at bar, but different in function. These springs appear to be merely ancillary to the operation of the pump; similar pumps could operate without springs. We do not think their presence significant.

The air pumps in Abstract 63100, *supra*, and in the case at bar, appear to be classical examples of machines.

Four recent cases remain to be considered. *John H. Faunce Phila.. Inc.* v. *United States*, 55 Cust. Ct. 423, Abstract 69541, September 16, 1965, holds that a weed burner is not a machine. This article incorporates an air pump which creates air pressure in a tank of kerosene. This pressure expels a mixture of kerosene vapor and air which passes out of a small orifice and burns with an intense blue flame. Doubtless, the principle is the same as that of the well known Primus stove. The pump is not operated when the device is burning the weeds except, presumably, intermittently to restore the pressure. The decision cites and relies on Abstract 63100, *supra*, which we now decline to follow. However, it is explainable on the alternative ground assigned by the court:

\* \* \* Moreover, the pump portion of the imported articles appears to be no more than a starter which ceases to function when the weed burning aspects of the articles are brought into operation.

The air pump, which is a machine, does not impart its character to the weed burner viewed as a whole. Pressure in the tank could be provided without dependence on moving parts. The essential parts of the article do not move relative to themselves and do not transmit or transform energy. An article may embody a machine without being a machine itself. *United States* v. *Adler-Jones Co.*, 20 CCPA 397, T.D. 46231.

*Oxford Int'l. Corp.* v. *United States*, 55 Cust. Ct. 472, Abstract 69607, October 28, 1965, involves a type of siren used on children's tricycles, scooters, and toy automobiles. The user presses down on a disk actuating a shaft in a metal housing. This engages gears which cause a "windmill" to rotate, expelling air through small orifices and producing a shrieking sound. Held, this article is a "machine." Essentially it would seem we have an air pump setting air in motion by a rotating fan instead of a piston, which could have been employed equally as well. The opinion makes no reference to Abstract 63100 and may well be regarded as overruling it *sub silentio*.

In *N. D. Cunningham & Co., Inc.* v. *United States*, *supra*, the presence of a temperature control thermostat is held to make a gas absorp-

tion refrigerator a "machine" under paragraph 372, being a moving part making a "direct contribution to the ultimate purpose for which the refrigerator is designed."

*Verity Southall, Ltd., et al.* v. *United States,* 53 Cust. Ct. 266, Abstract 68758, is cited in defendant's brief, but involves a pepper mill of the type familiar in recent years, having no resemblance in its mode of operation to the merchandise at bar.

Since we now have it on authority that classification of articles as machines *vel non* is not to be founded on any judicially approved definition, it is important to avoid classing them on a merely subjective basis. One is reminded of Mark Twain's pertinent passage in Extracts from Adam's Diary describing how Eve named the animals in the Garden of Eden:

Tuesday.—Been examining the great waterfall. It is the finest thing on the estate, I think. The new creature [Eve] calls it Niagara Falls—why, I am sure I do not know. Says it *looks* like Niagara Falls. That is not a reason, it is mere waywardness and imbecility. I get no chance to name anything myself. The new creature names everything that comes along, before I can get in a protest. And always that same pretext is offered—it *looks* like the thing. There is the dodo, for instance. Says the moment one looks at it one sees at a glance that it "looks like a dodo." It will have to keep that name, no doubt. It wearies me to fret about it, and it does no good, anyway. Dodo! It looks no more like a dodo than I do.

It is tempting to class contrivances as machines or not machines because they *look* like machines, or do not do so. With our verbal skills, it is easy to conceal what we have done, from the casual reader at least by a screen of technical dissertation and learned citation. In the law, seat-of-the-pants navigation can easily appear very scientific. Here, the legislative history establishes that a pump is a "machine" within the congressional intent, and courts have often so held. That history, and decisions binding on us, establish that, notwithstanding any subjective inclination to the contrary, an article such as a pump, otherwise a machine, is not severed from its species by reason of being light, simple, and cheap. In holding that the involved hand-operated bicycle pumps are machines, we thus enjoy, we hope, the support of nonsubjective reasoning. The same could not be said for a holding to the contrary.

We hold that the articles covered by the protests herein, except the merchandise described on the invoice covered by protest 63/12167 as "100—SKS—Racing-pumps, with valve for Schrader" are machines, properly dutiable under paragraph 372 of the Tariff Act of 1930, as modified, as machines, not specially provided for, or parts thereof,

at the rate of duty in effect at the respective dates of entry. Protest 63/12167, having been abandoned as to the said racing pumps, is dismissed to that extent. Judgment will be rendered accordingly.

CONCURRING OPINION

RAO, Chief Judge: While I participated affirmatively in the decision of Judge Ford in the case of *United Merchandising Corp. and Frank P. Dow Co., Inc.* v. *United States*, 42 Cust. Ct. 396, Abstract 63100, and I am of opinion still that a pump such as the kind here involved ought not to be considered a machine for tariff purposes, I am, nevertheless, constrained to concur in the conclusion reached by Judge Nichols in the instant case. I arrive at this seemingly inconsistent position by reason of what I believe to be the tenor and implications of the decisions of our appellate court in the cases of *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756; *Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786; and *The Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820, all of which were rendered after *United Merchandising Corp., supra.*

I appreciate that our appellate court was disinclined in the cited cases to formulate a judicial definition of the term "machine" which would be determinative in all instances, but, instead, relied upon a common meaning to be ascertained and derived from the facts in each case, *United States* v. *IDL Mfg. & Sales Corp., supra.* I am also aware of that court's approval in the *Nord Light* case, *supra*, of the following definition as an acceptable common meaning:

A device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction or to change one form of motion or energy into another.

Literally speaking, the pump in issue would fall within the foregoing definition since, in operation, the force which is applied in the downward stroke of the handle pushes the air, which entered the pump when the handle was raised, through the hose and into the article to which the hose is attached. In the sense that the air is caused to move and proceeds through the hose at a greater rate of speed than is exerted upon the handle of the pump to inflate a bicycle tire, it can be said of the pump in issue that it transmits and modifies both force and motion "so as to produce some given effect or to do some desired kind of work." *Vide* the definition of machine quoted from Webster's New International Dictionary in *IDL Mfg. & Sales Corp., supra.*

Careful analysis of the rationale of the decisions of the Court of Customs and Patent Appeals in the cases cited, *supra*, convinces me of that court's liberal interpretation of the term "machine" for tariff purposes, and I believe that we are implementing that approach in

holding the instant pump to be a machine within the purview of paragraph 372, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

DISSENTING OPINION

FORD, Judge: The air pumps involved herein operate substantially in the same manner as the pumps involved in *United Merchandising Corp. and Frank P. Dow Co., Inc.* v. *United States*, 42 Cust. Ct. 396, Abstract 63100, wherein said pumps were held by this court not to be machines. While the majority opinions hold the instant pumps to be machines, the reasoning supporting their decisions differ.

I am in agreement with my colleagues that there has been no judicial determination of what constitutes a machine and that the common meaning of the term is what governs. I concur with my colleagues that each case must stand on its own and be decided on the basis of its own facts both technical and legislative.

Considering the legislative history of the provision involved herein, I do not find any intent on the part of Congress to embrace within the term, "machine," an article such as is involved herein. While the Summary of Tariff Information, 1929, includes "pumps and pumping equipment" and the decisions cited refer to the bilge hand pumps which were decided under the Tariff Act of 1922, *Geo. S. Bush & Co.* v. *United States*, 52 Treas. Dec. 761, Abstract 4726, which is relied upon in the basic opinion herein, I am not convinced that this is any indication of legislative intent relative to merchandise of the type involved herein. Obviously, some types of pumps are machines. To consider all pumps to be machines merely because some types of pumps are machines would, in my judgment, reach beyond the realm of sound logic and require the court to indulge in speculation in arriving at its conclusion. Whether or not an article is a machine is dependent upon the facts in each and every case.

Reference to "pumping equipment" and "oil well machinery" engenders in my mind the kind or class of pumps which would fall within the machines category. This position is not based solely upon the complexity of the pumps involved since a machine may be simple or complex. *United States* v. *IDL Mfg. & Sales Corp.*, 48 CCPA 17, C.A.D. 756. The reference to the decision on the bilge pumps, *Geo. S. Bush & Co.*, *supra*, is a good example of this. The bilge pumps involved in the *Bush* case, *supra*, were, from the description in the decision, not of a complex nature yet differed considerably in operation and principle from the pumps involved herein. The bilge pumps consisted of a metal chamber which contained a brass rotor and the rotor was moved by a shaft and handle which operated on the

principle of a lever. The pump had two outlet valves which were forced to open and shut by reciprocating semirotary action, the power generated thereby pumping the water. In addition to the rotary action, the pump operated on the principle of a lever which by definition in and of itself is a machine. The operation of the bilge pump appears to be similar to that of the sprays involved in the case of *Emil Gebhardt* v. *United States*, 66 Treas. Dec. 983, Abstract 28998, cited in my opinion in Abstract 63100, *supra*, wherein the following description was quoted:

\* \* \* It appears that when the plunger therein is pulled out there is drawn into the cylindrical chamber a quantity of the spraying liquid; and when the plunger is pushed in the air pressure created turns the cylinder at from 1000 to 1500 revolutions per minute agitating the liquid and simultaneously causing it to be forcibly expelled through the minute holes in the nozzle producing a fine spray. \* \* \*

It becomes apparent that while the decision involving bilge pumps and the sprays involved in the foregoing case held those articles to be machines, and I concur with the findings therein, the air pumps involved herein differ materially both in principle and operation. The sprays utilized a cylinder which was rotated by air pressure and the bilge pumps utilized a rotary disk and lever to accomplish the intended use. The merchandise in issue does not utilize any rotary part or use a lever to accomplish its intended use but merely forces the air out of the hose.

The principle of legislative approval of judicial interpretation is a method utilized in ascertaining congressional intent. Legislative approval of judicial interpretation extends only to the precise points judicially determined. *Cunard Steamship Co., North German Lloyd* v. *United States*, 22 CCPA 615, T.D. 47605. There was no judicial determination brought to the attention of Congress holding bicycle pumps operated in the same manner as the pumps involved herein to be machines. I do not believe this principle to be applicable herein, since the provision for machines, not specially provided for, is so broad, it cannot be said that Congress in reenacting the provision intended to include all pumps by virtue of the decision involving bilge pumps.

Equally impelling is the fact that the term, "pumps," covers a wide variety of articles some of which are undoubtedly machines. As examples of the wide variety of basic types of pumps in existence—and there are many variations of these—The Mechanical Engineers Handbook by Lionel Marks lists, among others, the following: Pistonless pumps, stream jet pumps, ejector or supplier pumps, water jet pumps, air lift pumps, reciprocating pumps, centrifugal pumps, and rotary pumps.

To ascribe to Congress, on the basis of its having knowledge of the decision in the bilge pump case, the intent to cover all pumps of whatever variety would, in my opinion, be ill advised.

With respect to the facts considered technical, my colleagues and I are in agreement that the common meaning is controlling herein and that the meaning to be attached to a term or word used by Congress in enacting a statute is a matter to be determined by the court. In determining the common meaning, the court may accept or reject the testimony of a witness as his testimony is merely advisory, and, as an aid, the court may consult dictionaries and other sources. *United States* v. *C. J. Tower & Sons*, 48 CCPA 87, C.A.D. 770. The dictionary definitions used by the Court of Customs and Patent Appeals, in its recent decisions in the *IDL* case, *supra; Nord Light, Inc.* v. *United States*, 49 CCPA 12, C.A.D. 786; *Rosenblad Corp.* v. *United States*, 49 CCPA 81, C.A.D. 800; *Durst Mfg. Co., Inc.* v. *United States*, 50 CCPA 56, C.A.D. 820, to ascertain the common meaning, are of considerable assistance. In the *IDL* case, *supra*, certain hole punchers utilizing a spring which stored energy were held to be machines. This holding was not intended, in my opinion, to be interpreted that every article which has a spring is a machine. This court in the cases of *General Systems Services, Inc.* v. *United States*, 39 Cust. Ct. 506, Abstract 61376, and *Border Brokerage Company* v. *United States*, 41 Cust. Ct. 236, C.D. 2046, made such a pronouncement.

The court in the *Nord Light* case, *supra*, in considering the classification of certain pulley lights, held said articles to be within the common meaning of the term, "machine." While not stated in the decision therein, a review of various dictionaries indicates that a pulley itself is considered a simple machine.

The *Rosenblad* case, *supra*, involved heat exchangers which the court held did not fall within the common meaning of the term, "machine," since a machine must have a moving part. By the same token, I do not believe the Court of Customs and Patent Appeals intended this holding to be interpreted to the effect that every article or mechanical contrivance having a moving part is *ipso facto* a machine. The imported pumps have handles attached to rods which are movable. This in and of itself does not place said pumps within the category of "machines."

In the *Durst Manufacturing* case, *supra*, certain lawn sprinklers utilizing the energy in the moving stream of water caused the head to rotate. The court therein held that the energy of the water is converted into mechanical motion and, therefore, found said article to be within the common meaning of the term "machine."

The definition of "machine" utilized by the court of appeals in the *IDL* case, *supra*, and approved in the *Nord Light* and the *Durst* cases,

*supra*, furnishes a guideline for use in determining the common meaning.[1] That is not to say that said definition was intended by the Court of Customs and Patent Appeals to be the only guideline. An analysis of the stark definition of the term "machine," which is couched in technical language, suggests that some competent evidence be elicited along the lines of the technical language utilized therein. There is no evidence relative to the language "increase the intensity of an applied force." The only evidence of record relative to the various functions of a "machine" as set forth in the dictionary definition, *supra*, related to modification of energy and transmission of motion. As to these points the witness responded as follows:

Q. Do you know whether the merchandise in issue, the pumps, modify energy?—A. I refuse to answer anything connected with energy. I don't know anything about it.

\*      \*      \*      \*      \*      \*      \*

Q. Do you know whether the imported merchandise, referring again to the air pumps, transmits motion?—A. I am very sorry, I cannot answer this.

While the witness testified that the operation of the pump compresses air and, in his opinion, creates air pressure, he did not know how much pressure was developed. The amount of air expelled was in direct ratio to how fast a person pumped the handle.

The witness, by his own admission, has shown he is unqualified to testify as to whether the imported pump is a device whose function is to "increase the intensity of applied force," or "to change its direction," or "to change one form of motion or energy into another," thereby bringing it within the common meaning of the term "machine." While it is not necessary in every case to have expert testimony relative to common meaning, in this instance, since technical language is involved in the definition relative to the common meaning, it would have been of invaluable assistance.

Based upon the legislative history and the record made herein, I am of the opinion that plaintiff has failed to overcome the presumption of correctness attaching to the classification of the collector of customs.

I would, therefore, overrule the protests.

---

[1] A device which may be either simple or complex, whose function is to increase the intensity of an applied force, or to change its direction or to change one form of motion or energy into another.